ORDERED.

**Dated:  June 05, 2020**

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                                        Case No. 3:19-bk-2764-JAF

FIRST FLORIDA LIVING OPTIONS, LLC,                          Chapter 11

       Debtor.
_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Creditors Melvin R. Kunz and Marian Kunz's Motion for Confirmation that the Automatic Stay Does Not Apply or for Relief from the Automatic Stay to Notify Agency for Health Care Administration of Unsatisfied Judgment Pursuant to Section 400.024, Florida Statutes (the "Motion for Relief") (Doc. 93.)  On February 13, 2020, the Court conducted an evidentiary hearing on the Motion for Relief and took the matter under

advisement.[1]  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.[2]

### Findings of Fact

On July 22, 2019, First Florida Living Options, LLC (the "Debtor") filed a Chapter 11 bankruptcy petition (Doc. 1). The Debtor is an assisted living facility and nursing home doing business as Hawthorne Inn of Ocala and Hawthorne Health and Rehab of Ocala. (Doc. 148, ¶ 3). As of the date of filing, the Debtor had approximately 101 residents (Id., ¶4). On August 5, 2019, the Debtor filed its bankruptcy schedules (Doc. 38) and listed the claims of Melvin and Marian Kunz (the "Kunzes") in the total amount of $2,011,386.61. Prior to the filing of the bankruptcy petition, the Kunzes commenced an action against the Debtor based on injuries Mr. Kunz sustained as a result of the Debtor's negligence in April 2013 (Doc. 148, ¶ 3). On April 18, 2018, the Circuit Court in and for Marion County, Florida entered a Final Judgment in favor of the Kunzes in the amount of $1,987,143.44, of which $1,687,143.44 was awarded to Mr. Kunz and $300,000.00 was awarded to Mrs. Kunz (Doc. 148, ¶ 12,13). On April 18, 2018, a judgment lien in favor of the Kunzes in the amount of $1,987,143.44 was recorded with the State of Florida (Doc. 148, ¶ 14).

On August 28, 2019, the Debtor filed an application seeking authority to employ a broker to sell all of its assets through a court approved auction (Doc. 59). By Order dated September 17, 2019, the Court approved the application to employ the broker (Doc. 70).

On October 25, 2019, the Kunzes filed the Motion for Relief (Doc. 93). On November 15, 2019, the Debtor filed a Response to the Motion for Relief (Doc. 104). On November 18, 2019,

---

[1] The Honorable Cynthia C. Jackson conducted the evidentiary hearing on the Motion for Relief. However, the undersigned has listened to the recording of the hearing and familiarized himself with the exhibits.

[2] In addition to the facts gleaned from the parties' exhibits, the Court will rely on the parties' Stipulation of Uncontested Matters in Connection with the trial on the Motion for Relief (Doc. 148).

the Court held a preliminary hearing on the Motion for Relief and scheduled a trial for February 13, 2020.

On September 18, 2019, the Court entered an Order Directing Appointment of Patient Care Ombudsman and Notice of Hearing on Written Report (Doc. 71). On October 25, 2019, the United States Trustee appointed Carol Carr as the Patient Care Ombudsman (the "Ombudsman") in the case (Doc. 92). On December 10, 2019, the Ombudsman filed her initial report concerning the quality of care provided to the Debtor's residents for the assessment period of September 10, 2019 through November 7, 2019 (Doc. 117).

According to the Ombudsman's initial report: 1) Hawthorne Health and Rehab of Ocala was determined to be in compliance with 42 C.F.R. § 483, requirements for long term care facilities; 2) Hawthorne Inn of Ocala had no deficiencies at the time of the Agency for Health Care Administration's biennial re-licensure monitoring survey with extended congregate care or an emergency power plan; and 3) interviews with the administration, the medical director, residents, and staff offered no indication that the residents' medical care is being neglected at either Hawthorne Health and Rehab of Ocala or Hawthorne Inn of Ocala (Doc. 148, ¶¶ 23-25).

On February 10, 2020, the Ombudsman filed her second report concerning the quality of care provided to the Debtor's residents for the assessment period of November 13, 2019 through January 6, 2020 (Debtor's Ex. 6). According to the Ombudsman's second report, there is no indication that the residents' medical care is being neglected at Hawthorne Health and Rehab of Ocala.  (Id.) The second report does not indicate any issues with Hawthorne Inn of Ocala. (Id.)

On March 2, 2020, the Debtor filed its Chapter 11 Plan of Reorganization and Disclosure Statement (Docs. 154, 155). The Plan of Reorganization seeks to obtain a buyer to purchase all of the Debtor's assets (Doc. 154).

**Conclusions of Law**

The Florida Legislature enacted Fla. Stat. § 400.024 in 2014. Section 400.024 requires a nursing home licensee against whom a final judgment has been entered for a claim of negligence or a violation of residents' rights to pay the judgment in full within 60 days. Fla. Stat. § 400.024(1). Failure to make such payment "shall result in additional grounds that may be used by [the Agency for Health Care Administration ("AHCA")] for revoking a license or for denying a renewal application or a related party change of ownership application …" Id. Section 400.024 provides that AHCA may be notified of an unsatisfied judgment by being served with a certified copy of the judgment and the judgment lien certificate. Fla. Stat. § 400.024(2). Within 60 days of such notification, AHCA "shall" notify the nursing home licensee that it is subject to disciplinary action unless it pays the judgment within 30 days. Id. If the licensee does not pay the judgment within the 30-day period, AHCA "shall" issue an emergency order declaring that the facility lacks financial ability to operate and a notice of intent to revoke or deny a license. Fla. Stat. § 400.024(3). If the facility's license is subject to renewal after receiving the 30-day notice, AHCA "may" deny the license unless the facility pays the judgment. Fla. Stat. § 400.024(4)(a). If the licensee submits a change of ownership application for the facility after receiving the 30-day notice, AHCA "shall" deny the change of ownership application unless the facility pays the judgment. Fla. Stat. § 400.024(4)(b). In other words, unless a facility that receives a 30-day notice pays the outstanding judgment, AHCA may deny its license renewal and must deny its change of ownership application.

The Kunzes seek to notify AHCA of the unsatisfied judgment pursuant to § 400.024(2) so that it can revoke the Debtor's license or deny the change of ownership of the Debtor's license. Initially, the Kunzes argue that notification to AHCA would not violate the automatic stay because

it is not one of the enumerated acts set forth in § 362(a) of the Bankruptcy Code.[3] Alternatively, they argue that such notification would be excepted from the automatic stay pursuant to § 362(b)(4), which excepts from the automatic stay, "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organization's police and regulatory power." 11 U.S.C. § 362(b)(4) (2019). The Kunzes argue that AHCA's exercise of its powers under § 400.024 is an exercise of its police and regulatory powers as contemplated by § 362(b)(4) and that they, by extension, are exempt from the automatic stay for the purpose of notifying AHCA of the unsatisfied judgment pursuant to § 400.024(2). Finally, the Kunzes argue that cause exists to lift the stay "because the Kunzes notice to AHCA of their unsatisfied judgment is essential in allowing AHCA to exercise its statutory mandate to protect the elderly from responsible nursing home operators."

I.    **Does the Kunzes' Proposed Notice to AHCA of the Unsatisfied Judgment Implicate the Automatic Stay in the First Instance?  If so, would the Notice be Excepted from the Stay under § 362(b)(4) even though the Kunzes are not a Governmental Unit?**

The first issue before the Court is whether the proposed notice to AHCA of the unsatisfied judgment would implicate the automatic stay in the first instance. If so, the second issue is whether

---

[3] A bankruptcy petition stays the following:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; 11 U.S.C. § 362(a) (2019).

the notice would be excepted from the automatic stay under § 362(b)(4) even though the Kunzes are not a governmental unit.

The court in <u>McMullen v. Sevigny (In re McMullen)</u>, 386 F.3d 320 (1st Cir. 2004) addressed both issues. In <u>McMullen</u>, a disgruntled former client filed a complaint with a state agency against a realtor who had filed bankruptcy, alleging that the realtor fraudulently retained a deposit in a real estate transaction. The state agency dismissed the complaint because there was no evidence the realtor ever had possession of the deposit. The realtor filed an adversary proceeding alleging the former client violated the automatic stay by filing the complaint. The bankruptcy court granted judgment for the client, and the district court affirmed. The debtor appealed to the First Circuit.

The circuit court held that a private party's reporting of "wrongful conduct" to governmental regulatory authorities is neither the commencement of a proceeding under § 362(a)(1) nor necessarily an act to collect under § 362(a)(6). <u>McMullen</u>, 386 F.3d at 328. However, the court offered no explanation as to why the reporting of "wrongful conduct" to a governmental regulatory authority, if done for the purpose of recovering a pre-petition claim against the debtor, is not the commencement of a proceeding under § 362(a)(1). The court also held that the filing of the complaint was not an act to collect under § 362(a)(6) because the client did not make a post-petition threat to file a complaint. <u>Id.</u> at 328.

Finally, the court held that the proceeding was excepted from the automatic stay under § 362(b)(4) stating: "although we broadly construe the automatic stay in many contexts, the same sound public policy reasons which undergird the subsection 362(b)(4) exception counsel against any rule which might dissuade private parties from providing governmental regulators with information which might require enforcement measures to protect the public from imminent

harm." Id. The court, however, did not explain why the former client's filing of the complaint was the commencement of a proceeding by a governmental unit and would therefore come within the § 362(b)(4) exception.

The Court finds that the instant case is distinguishable from McMullen. The state agency in McMullen was only able to suspend, revoke, or refuse to renew a real estate broker's license. It was neither empowered to compel the realtor to repay the deposit to the client nor to award any other restitutionary remedy. Section 400.024, Florida Statutes, empowers AHCA to force a judgment debtor to pay an unsatisfied judgment within 30 days of receipt of notice, failing which AHCA *may* deny a license renewal application and *must* deny a change of ownership application. It is clear that the Kunzes' notification to AHCA of the unsatisfied judgment would be an act to collect a debt. Additionally, the McMullen court's failure to offer an explanation as to why the former client's filing of the complaint was the commencement of a proceeding by a governmental unit undermines its holding that the proceeding was excepted from the stay under § 362(b)(4). Moreover, it is unclear why the court reached the issue of whether the filing of the complaint was excepted from the stay under § 362(b)(4) if the stay was not implicated in the first place.

The instant case is more analogous to In re Reyes, 2011 WL 1522337, at *7 (Bankr. W.D. Tex. Apr. 20, 2011) (holding that "where the post-petition actions of a private party initiate government proceedings against the debtor, such conduct constitutes the commencement of an action against the debtor in violation of section 362(a)(1), and, depending on the facts, may constitute an attempt to collect a pre-petition debt in violation of section 362(a)(6)."). In Reyes a disgruntled former client sued Reyes, a real estate agent, in state court for damages resulting from Reyes' handling of a real estate transaction. After the verdict, Reyes informed the former client's attorney that she intended to file bankruptcy. The attorney responded that he would "run [Reyes]

out of business by filing a complaint with the Texas Real Estate Commission ("TREC") and close [her] down to get the money." After Reyes filed bankruptcy, the attorney filed a complaint with TREC. The filing of a complaint with TREC necessitates an investigation by TREC so long as the complaint, together with any evidence submitted with the complaint, provides reasonable cause for an investigation.  If the investigation results in a determination of wrongdoing on the agent's part, and if a finding of damages is made, TREC may make a monetary award to the complaining witness and may subsequently seek reimbursement from the agent in the amount of the award. Reyes sought contempt for violation of the automatic stay against the former client and the attorney for filing the complaint with TREC.

Initially, the court found that any proceeding initiated by TREC based on the former client's complaint would likely satisfy § 362(b)(4)'s public interest requirement as to TREC's pursuit of the action, even if it also happened to benefit the former client. But, the court noted that TREC's conduct was not at issue, and TREC was not named as a party against whom Reyes sought a contempt finding. Rather, Reyes argued that it was the actions of her former client and her former client's attorney in filing the complaint with TREC that violated the automatic stay.

The Reyes court distinguished the case before it from McMullen. First, the filing of the TREC complaint was done with the full knowledge that once a complaint was filed, TREC would be obligated to investigate the allegations if the complaint and the evidence submitted with the complaint provided reasonable cause for an investigation; TREC does not have discretion in deciding whether to investigate. Additionally, TREC does not conduct a pre-investigation to determine if the complaint has merit. Moreover, the attorney knew what the consequences of initiating the process would be and filed the complaint consistent with his threats of making sure that Reyes lost her real estate license if she filed bankruptcy. In McMullen, there was evidence to

8

the contrary in the record regarding the intentions of the complaining party. Additionally, the Massachusetts statute in <u>McMullen</u>, unlike the Texas statute in <u>Reyes</u>, did not compel the agency to commence an action without first satisfying itself that the pursuit of such an action was warranted.[4] The court stated: "In sum, as the <u>McMullen</u> court recognized (but failed to implement), 'given the expansiveness of subsection 362(a), the exception contained in subsection 362(b)(4) is to be narrowly construed' and should be applied only when an action against the debtor has been brought by the government." <u>Reyes</u>, 2011 WL 1522337, at *7 (quoting <u>In re McMullen</u>, 386 F.3d at 325).

The <u>Reyes</u> court found that the filing of the complaint with TREC was a violation of the automatic stay under § 362(a)(1) (commencement or continuation of a proceeding against the debtor to collect on a pre-petition debt) because the attorney was following up on his threats and intended to recover the judgment from Reyes indirectly, by way of TREC. <u>Reyes</u>, 2011 WL 1522337, at *5. The <u>Reyes</u> court further found it was a violation of § 362(a)(6) (an attempt to collect on a pre-petition debt) because the complaint was filed primarily to exert pressure on Reyes to pay the state court judgment, and not for the benefit of the public at large. <u>Id.</u> at * 6.

As the Court noted, § 400.024 empowers AHCA to force a judgment debtor to pay an unsatisfied judgment within 30 days of receipt of notice, failing which AHCA *may* deny a license renewal application and *must* deny a change of ownership application. Section 400.024 does not provide for an investigation. It merely requires payment.

---

[4] The <u>Reyes</u> court also contrasted the case before it with <u>United States Int'l Trade Comm'n v. Jaffe</u>, 433 B.R. 538 (E.D. Vir. 2010) (discussed further below), pointing out that the filing of a complaint with TREC, which states the requisite grounds for an investigation, commences such an investigation without any independent discretion on the part of TREC, unlike the proceeding in <u>Jaffe</u>.

Other courts have held that proceedings initiated by private entities but later pursued by governmental entities fall within the § 362(b)(4) exception. Jaffe, 433 B.R. at 544 (holding that where a private party files a complaint upon which a government agency chooses independently to commence an investigation, the investigation is an action brought by a governmental unit); In re Halo Wireless, Inc., 684 F.3d 581, 592 (5th Cir. 2012) (holding that pre-petition suits which private companies initiated before public utility commissions were "continued" by governmental unit).

In Jaffe, a corporation filed a complaint with the International Trade Commission ("ITC") alleging that certain respondents had violated the Tariff Act of 1930. One of the respondents then filed bankruptcy. The ITC argued that its investigation was excepted from the automatic stay under § 362(b)(4).[5] The court noted that, by its plain terms, § 362(b)(4) applies only where the action is brought by the government, and the action seeks to vindicate the public interest as opposed to a specific individual or entity's rights. The court found that the ITC investigation fit squarely within the exception. The court acknowledged that the information forming the basis of the investigation was initially provided by a private party but noted that the investigation did not begin with the filing of the complaint. The filing of the complaint is a pre-institution proceeding that prompts the ITC to examine the complaint, conduct informal investigatory activity, and determine whether an investigation is warranted. The court rejected the argument that the filing of a complaint by a

---

[5] The court provided the following background related to an ITC investigation. If an ITC investigation relies on information submitted in a complaint by a private party, the filing of the complaint does not initiate a formal ITC investigation. The action simply results in a pre-institution proceeding in which the ITC examines the complaint for sufficiency and compliance and performs a preliminary investigation. The formal ITC investigation does not begin until: 1) the ITC determines whether the complaint is properly filed and whether an investigation should be instituted on the basis of the complaint; 2) the ITC provides official notice by publication in the Federal Register; and 3) the ITC provides notice of the investigation to several federal agencies. In other words, the ITC's decision to independently commence an investigation after a private party's filing of a complaint is the result of a lengthy, prescribed process.

private party transforms an ITC investigation into an action by a private party, rather than a governmental unit, holding that "where a private party files a complaint upon which a government agency chooses independently to commence an investigation, the government agency's investigation is an action brought by a governmental unit." Jaffe, 433 B.R. at 544.

The instant case is clearly distinguishable from Jaffe. Section 400.024 does not require an investigation. It merely requires payment. Additionally, at least as to the change of ownership application, the statute does not grant AHCA any discretion. If the judgment debtor does not pay the outstanding judgment, AHCA must deny the application.

In In re Halo Wireless, Inc., 684 F.3d 581 (5th Cir. 2012), the debtor Halo was a telecommunications company that provided wireless phone and data service. Several local telephone companies initiated suit against Halo before ten state public utility commissions ("PUCs"), arguing that Halo was not properly compensating them for the call traffic it transferred to them. As a result, Halo filed a Chapter 11 bankruptcy case.

The creditor telephone companies filed motions requesting that the PUC proceedings be found exempt from the automatic stay under § 362(b)(4). Finding that it is the nature of the action, rather than the identity of the party initially precipitating the action, that determines whether § 362(b)(4) applies, the bankruptcy court in Halo ruled that, because the actions were all state regulatory proceedings, they were excepted from the automatic stay under § 362(b)(4). The case was certified to the Fifth Circuit.

On appeal, the telephone companies argued that the PUC actions were being continued by governmental units and therefore fell within the § 362(b)(4) exception. The court noted that, while most cases involve actions pursued by a governmental unit in its own name, many cases are initiated by the filing of a complaint by a private party, especially cases seeking to vindicate

workers' rights. The court acknowledged that <u>Reyes</u> and other cases have ruled that an action must be brought by a governmental unit in order for it to be exempt from the automatic stay in § 362(b)(4). The <u>Halo</u> court also noted <u>Reyes</u>' "reliance" on <u>Jaffe</u> (<u>Reyes</u> actually contrasted its case with <u>Jaffe</u>) but stated "[w]hile the court in <u>Jaffe</u> took pains to point out the discretion the government agency had in allowing an action to proceed, other courts have held that actions by private parties are excepted from the automatic stay without going into such an analysis." <u>Halo Wireless</u>, 684 F.3d at 591.[6]  The court pointed out that the bankruptcy court did not make any findings as to the specific procedures in each state PUC, which would aid the court in determining whether the individual commissions conduct pre-investigation proceedings, or have discretion over whether an action goes forward, as the courts in <u>Jaffe</u> and <u>Reyes</u> did. However, the court indicated that there was evidence that at least some of the PUC actions at issue were similar to an action a state regulatory commission might itself take and that in some instances a "governmental unit" actually becomes a party to the action.  <u>Id.</u> at 592.

After its lengthy discussion of <u>Reyes</u> and <u>Jaffe</u>, the court changed course and relied on entirely different reasoning for its holding, stating: "It neither ignores nor twists the words of the statute to interpret [the] phrase [the continuation of an action or proceeding by a governmental unit] as excepting suits continued by a governmental unit without regard to who initially filed the complaint." <u>Halo Wireless</u>, 684 F.3d at 591. The court found that the PUC actions were continued by governmental units and therefore met the first requirement of the exception to the automatic

---

[6] The cases to which the <u>Halo</u> court referred dealt with the imposition of sanctions for improper conduct in litigation. <u>See</u> <u>Alpern v. Lieb</u>, 11 F.3d 689, 690 (7th Cir. 1993) (holding that proceeding to impose sanctions under Rule 11 was "exempt" from stay under § 362(b)(4)); <u>In re Berg</u>, 230 F.3d 1165, 1168 (9th Cir. 2000) (holding that § 362(b)(4) "exempts" from the stay an award of attorney's fees imposed under Rule 38 as sanction for prosecuting frivolous appeal); <u>see also</u> <u>In re Coulton</u>, 594 F. App'x 563, 566 (11th Cir. Nov. 25, 2014) (holding that contempt order was excepted from automatic stay because judiciary, acting through movant as a surrogate, in effect "brought" contempt proceeding).

stay (the second being whether the intended action was to enforce the government's police and regulatory power). Id.

The Court disagrees with the Fifth Circuit's reading of § 362(b)(4). The Court finds that the phrase "commencement or continuation of an action or proceeding by a governmental unit" means the commencement of an action or proceeding by a governmental unit or the continuation of an action or proceeding by a governmental unit that was originally commenced by a governmental unit.

In conclusion, the Court finds that, notwithstanding the holding in McMullen, sending notice to AHCA would implicate the automatic stay because it would be an attempt to collect a pre-petition debt in violation of § 362(a)(6). Additionally, while Jaffe and Halo applied the § 362(b)(4) exception to a non-governmental unit, the Court finds that Jaffe is distinguishable, and the Court respectfully disagrees with the Halo court's reading of the statute.

**II.      Does Cause Exist to Lift the Automatic Stay?**

The Kunzes argue that cause exists to lift the stay "because the Kunzes notice to AHCA of their unsatisfied judgment is essential in allowing AHCA to exercise its statutory mandate to protect the elderly from responsible nursing home operators." In light of the two ombudsman reports that there are no concerns or issues with the Debtor's facilities, the Court finds that cause does not exist to lift the stay.

<u>Conclusion</u>

The Court holds that the Kunzes' proposed notice to AHCA would be a violation of the automatic stay pursuant to § 362(a)(6) because it would be an attempt to collect a claim against the Debtor that arose before the filing of the case. Additionally, the Court finds that notice to AHCA would not be excepted from the automatic stay because the Kunzes are not a governmental unit. Finally, in light of the ombudsman reports that there are no issues with either of the Debtor's

13

facilities, the Court finds there is no cause to lift the automatic stay.  The Court will enter a separate

order consistent with these Findings of Fact and Conclusions of Law.

Attorney Alberto F. Gomez, Jr., Esq. is directed to serve a copy of this order on interested parties
who do not receive service by CM/ECF and file a proof of service within three (3) days of entry
of this order.